905 So.2d 620 (2004)
In the Matter of the ESTATE OF Kela RICHARDSON, Deceased.
Bernice Richardson, Administratrix of the Estate of Kela Richardson, Appellant/Cross Appellee,
v.
Virgil Cornes, Jr., Individually and as The Natural Father and Duly Appointed Guardian of Virgil Cornes, III, A Minor, Jerome Cornes and Julian Cornes, Appellees/Cross Appellants.
No. 2002-CA-01485-COA.
Court of Appeals of Mississippi.
May 18, 2004.
Rehearing Denied August 3, 2004.
*622 Ellis Turnage, Cleveland, Tamekia Rochelle Goliday, attorneys for appellant.
William Harvey Gresham, Clarksdale, attorney for appellees.
EN BANC.
IRVING, J., for the Court.
¶ 1. Bernice Richardson, in her capacity as the administratrix of the estate of her deceased daughter, Kela Richardson, filed a petition to disinherit Virgil Cornes, Jr., Kela's biological father, and his three children, Jerome Cornes, Julian Cornes, and Virgil Cornes, III (the Corneses) because Virgil Cornes, Jr. had not acknowledged and supported Kela during her lifetime.[1] This petition was filed after Richardson had filed three previous pleadings in which she alleged, without qualification or explanation, that the Corneses, along with her and her children, were Kela's heirs and wrongful death beneficiaries.[2]
¶ 2. The chancellor denied the petition, finding that Richardson possessed unclean hands and that she should be equitably estopped from seeking to disinherit the Corneses. The finding was predicated upon the fact that Richardson had filed the previously, mentioned pleadings in which she alleged that the Corneses were Kela's heirs at law and wrongful death beneficiaries. Richardson contends that the chancellor erred by refusing to consider the merits of her petition to disinherit the Corneses.
¶ 3. The Corneses filed a cross-appeal asserting that the chancellor erred in awarding administratrix's and attorney's fees and expenses.
¶ 4. We reverse the chancellor's decision that Richardson is estopped, because of unclean hands, from seeking to disinherit the Corneses and remand the matter for a hearing on the merits of Richardson's allegations that Virgil Cornes, Jr. did not acknowledge and support Kela during her lifetime. We also reverse and remand the chancellor's decision awarding Richardson $40,000 in administratrix's fees, as we find this amount excessive and not made in accordance with the Uniform Chancery Court Rules. We do not find that the amount of attorney's fees awarded is necessarily excessive. However, we reverse and remand the attorney's fee award because we find it, like the administratrix's fee award, was not made in accordance with the Uniform Chancery Court Rules. Both awards are remanded to the chancellor for further consideration in accordance with the appropriate rule, provided that Richardson presents proper documentation.

FACTS
¶ 5. On August 8, 1996, Richardson filed, in the Chancery Court of the Second Judicial District of Bolivar County, a sworn petition for grant of letters of administration *623 upon the estate of Kela Richardson, who died intestate on January 29, 1996. In her petition for grant of letters of administration, Richardson alleged, inter alia, that "[u]pon information and belief, Kela Richardson left surviving her the following heirs at law and next of kin: Bernice Richardson, mother; Virgil Carnes, father; Chrysanthemum Richardson, sister; Nathan P. White, brother; and Kamia White, sister."[3] Richardson asked to be appointed administratrix of Kela's estate.
¶ 6. Letters of administration were granted to Richardson as requested. Thereafter, she filed and successfully pursued a wrongful death claim against the physician and other medical care providers who provided treatment to Kela prior to her death.
¶ 7. The next relevant pleading filed by Richardson was the petition to determine Kela's lawful heirs. This petition was filed on August 11, 2000. In this petition, Richardson alleged the following:
The decedent, Kela Richardson, was survived by the following heirs at law and wrongful death beneficiary, [sic] under Mississippi's Wrongful Death Act set forth in Mississippi Code Ann. Section 11-7-13 (Cum.Supp.1992): Bernice Richardson, mother; Virgil Cornes Jr., father; Chrysanthemum Richardson, sister; Nathan P. White, a minor brother; Kamie White, a minor sister; Virgil Cornes, III, a minor brother; Julian Cornes, a minor brother and Jerome Cornes, a brother.
¶ 8. The third pleading filed by Richardson was the petition to settle the claim of the estate and the claim of the wrongful death beneficiaries. In this petition, Richardson alleged that:
[A]t the time of [Kela's] death, she was survived by the following heirs at law and wrongful death beneficiaries under the Mississippi Wrongful Death Statute, [sic] 11-7-13 Mississippi Code Annotated (1972): Petitioner; her father, Virgil Cornes, Jr.; her sister, Chrysanthemum Venquil Richardson; her brother, Jerome Cornes; her brother, Julian Cornes; her brother, Nathan Duwell White; her sister, Kamica White; and, her brother Virgil Cornes III. They have been declared wrongful death beneficiaries by separate order of the court.
¶ 9. The final relevant pleading filed by Richardson was a petition in which she sought to prevent the Corneses from receiving a share of the wrongful death proceeds realized as a result of Kela's death. Richardson denominated the pleading "Petition for Determination of Heirs at Law and Wrongful Death Beneficiaries and to Disinherit Natural Father and His Kindred." In paragraph 4 of this pleading, Richardson alleged the following:
The decedent, Kela Richardson, was survived by the following heirs at law and wrongful death beneficiaries, under Mississippi's Wrongful Death Act [sic] set forth in Mississippi Code Ann. Section 11-7-13 (Cum.Supp.1992): Bernice Richardson, mother, 1301 Church Street, Apt. 28, Shelby, Bolivar County, Mississippi and Virgil Cornes Jr., father; 1020 Quail Wood Drive, Fayetteville, North Carolina 28314; Nathan White, a minor, brother; Kamica White, a minor, sister; and Chrysanthemum Richardson, a sister of 1301 Church Street, Apt. 28, Shelby, Bolivar County, Mississippi; Virgil Cornes, III, a minor brother, 1020 Quail Wood Drive, Fayetteville, North Carolina 28314; Jerome Cornes, a *624 brother; and Julian Cornes, a brother of Saarpsalzstr # 126, Hamburg, Germany.
¶ 10. After listing Kela's heirs at law, which list included the Corneses, Richardson set forth her reasons for asserting that the Corneses should not take a share of the wrongful death proceeds, stemming from Kela's death, even though Virgil Cornes, Jr. was Kela's natural father. The reasons, as laid out by Richardson in her petition, are set forth in the following paragraphs:
8. After petitioner learned that she, [sic] was pregnant in January 1973, Virgil Cornes, Jr. who was then in the United States military [sic] abandoned her and had no further contact and/or communications with petitioner.
9. During her pregnancy, Virgil Cornes, Jr. provided no financial or emotional support to petitioner. After Kela Richardson's birth, Virgil Cornes, Jr. visited with Kela Richardson on two occasions. On the first occasion Virgil Cornes, Jr. ever saw Kela Richardson, she was two and a half years old. The next time Virgil Cornes, Jr. saw Kela Richardson she was four to five years old. Virgil Cornes, Jr. did not see Kela Richardson again until 1991. After the 1991 visit, Virgil Cornes, Jr. never saw Kela Richardson again before her death on January 29, 1996.
10. Virgil Cornes, Jr. never financially or emotionally supported or acknowledged Kela Richardson as his child and to date has never paid any of her medical or hospital bills related to the pre-natal care, labor and delivery treatment rendered to Kela Richardson and necessitated by her birth.
11. Virgil Cornes, Jr. deserted petitioner during her pregnancy and provided no emotional or financial support to petitioner during the pregnancy. Virgil Cornes, Jr. had no communication with petitioner during her pregnancy, during Kela Richardson's life or after the death of Kela Richardson on January 29, 1996.
12. Virgil Cornes, Jr. did attend Kela Richardson's funeral and paid $300 toward the Hank Byas funeral bill which amounted [to] $3,619.
13. Pursuant to Miss.Code Ann. Section 91-1-15(3)(d)(i) (1994), Virgil Cornes, Jr. and his natural kindred Virgil Cornes, III, Julian Cornes, Jerome Cornes, are precluded from inheriting from Kela Richardson. Virgil Cornes, Jr. did not openly treat Kela Richardson as his child and refused or neglected to support the child in anyway. Neither Virgil Cornes, Jr. nor his kindred are entitled as a matter of fact or law to inherit from Kela Richardson.
14. Virgil Cornes, Jr. should not be allowed to receive an economic windfall simply because he impregnated petitioner. Virgil Cornes, Jr. refused to openly treat Kela Richardson as his daughter or to comply with his duty to provide essential support, and he and his kindred should be prohibited from receiving an inheritance.
¶ 11. Pursuant to Richardson's first petition to determine Kela's heirs, the chancellor issued an order in which he found that Kela's lawful heirs and beneficiaries under Mississippi's Wrongful Death Act were Richardson, her children, and the Corneses.
¶ 12. In the order granting authority to settle the claim of the estate, Richardson was authorized to pay "any and all attorney's fees and expenses and satisfy all liens on the estate" and to distribute the remainder of the wrongful death proceeds to the heirs and beneficiaries as determined in the order entered pursuant to the first petition to determine Kela's heirs and wrongful death beneficiaries.
*625 ¶ 13. Ultimately, the chancellor authorized payment of administratrix's fees in the amount of $40,000 and attorney's fees and expenses in the amount of $5,496.61. It is the award of these fees that forms the basis of the Corneses's cross-appeal.
¶ 14. After Richardson filed her petition to disinherit the Corneses, the Corneses responded three months later by filing a petition to enforce the court's prior orders, including the order authorizing distribution of the remainder of the wrongful death proceeds. Thereafter, the chancellor issued an order pursuant to the Corneses's petition for enforcement of the court's prior orders. In this order, the chancellor acknowledged that his prior order determining Kela's heirs at law and wrongful death beneficiaries was not a final judgment. However, the chancellor held in paragraph 11 of his order:
That the Administratrix [sic] is prohibited, based on the clean hands doctrine and the doctrine of collateral estoppel, from maintaining her Petition to Disinherit because the Administratrix [sic] has made numerous sworn statements that the Cornes [sic] are heirs at law and wrongful death beneficiaries of the Decedent [sic] to this Court and the Court has found them in fact to be heirs at law and wrongful death beneficiaries of the Decedent, and the Administratrix [sic] cannot now make another sworn statement contrary to her prior sworn statements and receive a benefit to the detriment of the Cornes [sic].
¶ 15. It is from this order that Richardson prosecutes her appeal.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 16. This Court will not disturb the findings of a chancellor when those findings are supported by substantial evidence, unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Denson v. George, 642 So.2d 909, 913 (Miss.1994).

1. Whether Richardson is Estopped from Seeking to Disinherit the Corneses
¶ 17. By statute, the father of an illegitimate child, and his kindred, may not inherit from the illegitimate child unless the father acknowledged and supported the child during the child's lifetime.
¶ 18. The relevant statute is Mississippi Code Annotated section 91-1-15(3)(a)-(d) (Rev.1994) which reads as follows:
(3) An illegitimate shall inherit from and through the illegitimate's natural father and his kindred, and the natural father of an illegitimate and his kindred shall inherit from and through the illegitimate according to the statutes of descent and distribution if:
(a) The natural parents participated in a marriage ceremony before the birth of the child, even though the marriage was subsequently declared null and void or dissolved by a court; or
(b) There has been an adjudication of paternity or legitimacy before the death of the intestate; or
(c) There has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under sections 91-1-27 and 91-1-29. However, no such claim of inheritance shall be recognized unless the action seeking an adjudication of paternity is filed within one (1) year after the death of the intestate or within ninety (90) days after the first publication of notice to creditors to present their claims, whichever is less; and such time period *626 shall run notwithstanding the minority of a child....
(d) The natural father of an illegitimate and his kindred shall not inherit:
(i) From or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child.
¶ 19. Before filing her petition to disinherit the Corneses, Richardson had not stated in any prior pleading or action that Virgil Cornes, Jr. had openly treated and supported Kela as his child nor had she waived the provisions of section 91-1-15(3)(d), thereby entitling him, and his kindred, to inherit from Kela.
¶ 20. It seems to us that the legislature, by enacting subsection 3(d) of section 91-1-15, made a public policy decision that the father of an illegitimate child may not receive the benefit of inheritance from the child unless, during the lifetime of the child, he had stepped up to the plate and shouldered his responsibility toward the child. In the statutory scheme providing for the right of inheritance by the father of an illegitimate child, the legislature constructed a two-prong standard that must be met.
¶ 21. First, the biological father must prove that he is in fact the father of the illegitimate. As proof, he may show (1) that he and the mother of the illegitimate participated in a marriage ceremony before the birth of the child, (2) that there has been an adjudication of paternity or legitimacy before the death of the intestate, or (3) that there has been an adjudication of paternity after the death of the intestate, based upon clear and convincing evidence, in an heirship proceeding under sections 91-1-27 and 91-1-29. Miss.Code Ann. § 91-1-15(3)(a)(b)(c) (Rev.1994). An action seeking an adjudication of paternity must be timely filed, i.e., within one year after the death of the intestate or within ninety days after the first publication of notice to creditors, whichever is less. Id.
¶ 22. Second, the father must prove that he acknowledged and supported the illegitimate during the illegitimate's lifetime. Miss.Code Ann. § 91-1-15(3)(d) (Rev.1994). Timely proof of the first prong may make the father an heir, in a general sense, of the intestate, but he does not become an heir entitled to inherit from the illegitimate intestate until he offers satisfactory proof of the second prong.
¶ 23. In the absence of a clear, unequivocal, and unambiguous waiver of the requirements of section 91-1-15(3)(a)(b)(c) and (d) by the maternal heirs of an illegitimate child, we think the natural father, who has not fulfilled his obligations to acknowledge and support the child during the child's lifetime, is prevented from enjoying the benefits of inheritance. We are not persuaded that Richardson's listing the Corneses as heirs and beneficiaries in her earlier pleadings operates as a waiver of this prohibition.
¶ 24. In our view, Richardson's prior pleading that the Corneses were heirs and wrongful death beneficiaries of Kela does not mean that she was saying, in the same breath, that she waived the statutory requirement that Virgil Cones, Jr. prove his and his children's entitlement to inherit from Kela. Further, we find that Richardson was required to list all known potential heirs of Kela's estate. Therefore, Richardson had no other alternative but to list the Corneses as persons who fell in the heirship category because she, as Kela's natural mother, certainly knew the identity of Kela's natural father. Perhaps, it would have been better if she had stated simply that Virgil Cornes, Jr. was Kela's natural father rather than stating that he and his children were heirs. Had she used the term "father" instead of "heir," would it *627 now be contended that she, by use of that descriptive term in stating Virgil Cornes's relationship to Kela, had also waived the requirement that the Corneses prove their right to inherit from Kela? We think not. Although Richardson was represented by an attorney, there is no reason to assume that she was using the word "heir" as a term of art when she filed her pleadings.
¶ 25. It seems to us that at most, Richardson's admission in her pleadings  that Virgil Cornes, Jr. was Kela's natural father and heir  only dispensed with the requirement that he prove paternity. As already noted, she said nothing about Virgil Cornes, Jr.'s acknowledgment and support of Kela which is the subject matter of the second prong. Requiring the natural father of an illegitimate child to acknowledge and support his illegitimate child during the child's lifetime or be barred from inheriting from the child serves an important public policy. It should not lightly be cast aside.
¶ 26. Before one is deemed to have waived a valuable right, it ought to be clear, beyond doubt, that a waiver was intended. As a minimal, a waiver should never be found where the specific matter which is alleged to have been waived is not contained on the face of the pleading which allegedly constitutes the waiver. This would appear to be especially true in notice pleading jurisdictions such as ours. Therefore, since Richardson never specifically stated, nor otherwise clearly indicated, that she waived the statutory requirement that Virgil Cornes, Jr. prove his worthiness to inherit from Kela, we do not find that a waiver occurred here.
¶ 27. Moreover, even if there were a waiver by Richardson, it, in our judgment, would only be enforceable against her. We do not believe she could waive any portion of her children's right of inheritance. By his action, the chancellor effectively cut off a portion of Kela's maternal siblings' right of inheritance who, beyond question, did not file anything or take any action which could even arguably be considered a waiver of their rights.
¶ 28. As we stated during the recitation of facts, the chancellor, in his order, stated that he was relying upon two doctrines, unclean hands and collateral estoppel, in determining that Richardson could not seek to disinherit the Corneses. In the chancellor's view, Richardson
[had] made numerous sworn statements that the Cornes [sic] are heirs at law and wrongful death beneficiaries of the Decedent [sic] to this Court and the Court has found them in fact to be heirs at law and wrongful death beneficiaries of the Decedent, and the Administratrix [sic] cannot now make another sworn statement contrary to her prior sworn statements and receive a benefit to the detriment of the Cornes [sic].
¶ 29. Clearly, the chancellor was incorrect if in fact he was relying upon the doctrine of collateral estoppel inasmuch as none of the prior orders which had been entered by the chancellor pursuant to the various pleadings filed by Richardson were final judgments. We accept that he meant equitable estoppel since that is what he said during the hearing on Richardson's motion. However, we find that his reliance upon equitable estoppel, as well as upon the unclean hands doctrine, to be misplaced.
¶ 30. The chancellor's finding that Richardson's hands were unclean is not supported by the evidence and is clearly erroneous. We do not believe that the exercise of a statutory right, without more, can be the basis for sustaining a charge of unclean hands. Nor do we believe that the unclean hands defense is strengthened by the fact that Richardson's action caused or *628 permitted an initial order to be entered adjudicating the Corneses, Kela's heirs and wrongful death beneficiaries. The initial order was clearly an interlocutory order, subject to modification at any time before the final judgment was entered.
¶ 31. We further find that the chancellor was not warranted in finding that Richardson's petition to disinherit the Corneses constituted a "sworn statement contrary to her prior sworn statements." Although Richardson did file several pleadings in which she asserted that the Corneses were Kela's heirs and wrongful death beneficiaries, as we have already discussed, she did not back away from or contradict this assertion in her petition to disinherit the Corneses, nor did she ever contradict her earlier assertions that Virgil Cornes, Jr. was Kela's natural father. What she did in the petition to disinherit was to add an explanation as to why the Corneses were not entitled to inherit from Kela. She had not asserted, in any of her prior pleadings, that Virgil Cornes, Jr. had acknowledged and supported Kela during Kela's lifetime and was thereby entitled to inherit from her. Further, it is evident that Richardson's statement that Virgil's children were Kela's heirs was predicated solely on her admission that Virgil Cornes, Jr. was Kela's biological father. As we have already noted, we find no reason to believe that Richardson, in her earlier pleadings, was using the word "heir" as a term of art rather than in the general sense of the meaning of the word.
¶ 32. The chancellor also observed that Richardson's action in filing the petition to disinherit the Corneses was designed to benefit her to the detriment of the Corneses; therefore, she was equitably estopped. We do not follow the chancellor's reasoning in this regard. There is nothing in the record to support the notion that the Corneses gave up anything of value in exchange for Richardson's agreeing not to oppose their right to receive an heir's share of the wrongful death proceeds. Therefore, the question must be asked: what detriment did the Corneses suffer as a result of Richardson's actions. What did they give up and subsequently lose as a result of Richardson's actions? The answer is nothing.
¶ 33. Richardson's pleading that the Corneses were heirs and wrongful death beneficiaries was the result of her fiduciary obligation to list all known or possible heirs of Kela. Nothing that the Corneses did was responsible for Richardson's averment that Virgil Cornes, Jr. was Kela's natural father. But more importantly, the Corneses possessed the same right after Richardson's attempt to disinherit them as they did before her attempt to do so. Nothing prevented them then, nor does anything prevent them now, from proving that Virgil Cornes, Jr. acknowledged and supported Kela during her lifetime. Richardson's petition to disinherit the Corneses does not alter this fact.
¶ 34. For sure, if Richardson were successful in disinheriting the Corneses, that would be to their detriment, but that circumstance would not be brought about as a result of a changed position by Richardson because she never stated that Virgil Cornes, Jr. acknowledged and supported Kela, and was thereby entitled to inherit from her. It would be Virgil Cornes, Jr.'s failure to prove that he acknowledged and supported Kela during her lifetime which would cause his and his children's detriment. Richardson's actions would have contributed in no way to this result. The result would emanate solely from Virgil Cornes, Jr.'s own dereliction of his parental obligations to Kela.
¶ 35. While we appreciate the importance of the fact that Richardson did not alert the chancellor  during any of the *629 pleadings which she filed prior to filing her petition to disinherit the Corneses  that there was or would be a dispute regarding the Corneses's right to inherit from Kela, and that Richardson's failure to do so resulted in an order being entered that adjudicated the Corneses Kela's heirs and wrongful death beneficiaries, we are not persuaded, for three reasons, that this omission rises to the level of unclean hands. First, she was not required to divulge her trial strategy if indeed that is what it was. Second, she had a statutory right, in the absent of a clear, unambiguous and unequivocal waiver, to insist on a showing that Virgil Cornes, Jr. had met the statutory prerequisite for inheriting from Kela. Third, the Corneses have not suffered a detriment as a result of Richardson's actions, unless their having to prove that Virgil Cornes, Jr. acknowledged and supported Kela during her lifetime is considered a detriment. If this can be considered a detriment, we are satisfied that it is not the kind of detriment that will support the imposition of equitable estoppel, for nothing Richardson has done will prevent Virgil Cornes, Jr. from making the proof necessary to ensure his entitlement to inherit.
¶ 36. Although it is perhaps implicit in our discussion, regarding equitable estoppel, that we likewise do not find judicial estoppel applicable to our facts, we make clear that is the case. The dissent, citing Dockins v. Allred, 849 So.2d 151, 155 (¶ 8) (Miss.2003) correctly notes that "judicial estoppel precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in litigation." Even if we were to accept that Richardson made prior inconsistent statements, there is no showing that she received a benefit from any of her prior statements which she now seeks to abandon to the detriment of the Corneses. In fact, her earlier statements would result in a detriment, not a benefit, to her. "[W]hen the party making the prior statement, which is inconsistent with his position in the present action has not benefitted by the assertion, the doctrine should not be applied." Thomas v. Bailey, 375 So.2d 1049, 1053 (Miss.1979.)

2. Whether the Chancellor Erred in Allowing Administratrix and Attorney's Fees
¶ 37. In their cross-appeal, the Corneses recognize and admit that an award of administratrix's and attorney's fees is a matter vested and left to the sound discretion of the chancellor. In Re Estate of Thomas, 740 So.2d 332 (Miss. App.1999). They argue that Richardson supplied "no evidence as to the reasonableness of her fees" and that her attorney did not submit supporting documentation to justify his fee. In other words, the Corneses argue that the chancellor erred in awarding the administratrix's and attorney's fees because "he made no inquiry as to the reasonableness of the fees." Citing In Re: Estate of Johnson, 735 So.2d 231, 236 (¶ 25) (Miss.1999), the Corneses argue that the matter of the fees should be remanded to the chancellor "for a hearing on the reasonableness of the administratrix's and attorney's fees." We have reviewed the record, and we agree with the Corneses on this issue. Therefore, we reverse and remand the matter of the administratrix's and attorney's fees for further consideration in accordance with established precedent and the Uniform Chancery Court Rules. See Unif. Ch. Ct. R. 6.11 and 6.12.
¶ 38. The dissent, noting that we have focused on whether Richardson waived or had the authority to waive the requirements of Mississippi Code Annotated Section *630 91-1-15(3)(d)(i) (Rev.1994)," states (1) that "[w]aiver was not considered by the chancellor," (2) that neither the facts nor the law supports our conclusion, and (3) that we "should not sanction, indeed reward, a litigants's deception."
¶ 39. We acknowledge that neither waiver nor judicial estoppel was mentioned or discussed by the chancellor, yet we find nothing inappropriate with our discussing waiver, or the dissent's discussing judicial estoppel, if we determine that the two concepts have a bearing upon the proper resolution of the issue before us.
¶ 40. We construe the basis of the chancellor's ruling, as indicated by the wording of paragraph 11, to be the unclean hands doctrine and equitable estoppel. We note that the chancellor was concerned about "the detriment to the Corneses." If he intended judicial estoppel, there would have been no need to mention detriment to the Corneses, for a finding that one of the parties has suffered a detriment is not a prerequisite to the imposition of judicial estoppel.
¶ 41. In his bench opinion, the chancellor stated:
The court is concerned, however, since this ruling is based upon equity, primarily equitable estoppel, and the unclean hands doctrine, a maximum [sic] equity which predates just about all of our law, old English law, the Court is concerned, however, that based upon the petition that was subsequently filed by Mrs. Richardson as the administratrix of the estate to determine heirs and to disinherit Virgil Cornes, Jr., as being the father of Kela Richardson as to whether or not Virgil Cornes, Jr.; Virgil Cornes, II; and the other two Cornes sibling are entitled to an equal share of the proceeds from this wrongful death settlement.
¶ 42. The chancellor could not have been clearer that equitable estoppel and the unclean hands doctrine were the basis for his ruling. It is also clear that the chancellor believed that Richardson's petition to disinherit the Corneses had merit. It is perhaps significant that the chancellor framed Richardson's petition as being one "to disinherit Virgil Cornes, Jr., as being the father of Kela Richardson." That is not what the petition says. Richardson has never wavered in any of her pleadings, even the petition to disinherit, on her statement that Virgil Cornes, Jr. was Kela's father. It may be that the chancellor failed to discern the difference between an assertion that Virgil Cornes, Jr. is an heir because he is Kela's biological father and an assertion that Virgil Cornes, Jr. is an heir who is not entitled to inherit because he shirked his natural and statutory responsibility.
¶ 43. We have found no authority supporting the notion that Richardson's actions should bind her children, Chrysanthemum Richardson, Nathan P. White and Kamia White. Yet, our adopting the dissents's view would compel this result. As we have already stated, these persons are heirs and wrongful death beneficiaries from Kela's maternal side. Should they be estopped from seeking to disinherit the Corneses? They never filed anything asserting that the Corneses were Kela's heirs and wrongful death beneficiaries.
¶ 44. Finally, we note that the dissent  in suggesting that this Court reverse and render on the issue of fees because no supporting documentation was attached to the applications for fees and because the chancellor failed to consider the required factors  argues for a result that even the Corneses do not seek. Were this Court to embrace this suggestion, any finding that a chancellor failed to follow the proper factors in an award of child support, alimony, *631 or the equitable distribution of marital property, would of necessity, cause the right to be forever lost. That is not the law, nor should it be the law.

CONCLUSION
¶ 45. The decision of the chancellor finding that Richardson is estopped from pursuing her petition to disinherit Virgil Cornes, Jr. and his children is reversed and rendered, and this case is remanded to the Chancery Court of the Second Judicial District of Bolivar County for a full hearing on the merits of Richardson's petition to disinherit. If on remand Richardson can show that Virgil Cornes, Jr. did not openly treat Kela Richardson as his child and refused or neglected to support her during her lifetime, then the chancellor shall enter an order disinheriting Virgil Cornes, Jr. and his children from participating in the wrongful death proceeds emanating from the settlement of the wrongful death lawsuit. On the other hand, if she fails to meet her burden of proof in establishing that Virgil Cornes, Jr. did not openly treat Kela Richardson as his, and refused or neglected to support Kela during Kela's lifetime, then an order shall be entered adjudging that Virgil Cornes, Jr. and his children be included in the denomination of Kela Richardson's heirs who are entitled to inherit from her.
¶ 46. As we find that Richardson has clearly admitted that Virgil Cornes, Jr. is Kela's natural father, the necessity to prove paternity is dispensed with notwithstanding the fact that Virgil Cornes, Jr. never instituted a paternity action as required by section 91-1-15(c) of the Mississippi Code of 1972 as amended.
¶ 47. The matter of the administratrix's and attorney's fees is remanded for a hearing on the reasonableness of the fees requested.
¶ 48. THE JUDGMENT OF THE CHANCERY COURT OF THE SECOND JUDICIAL DISTRICT OF BOLIVAR COUNTY IS REVERSED ON BOTH DIRECT AND CROSS-APPEAL AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEES.
KING, C.J., THOMAS, LEE, AND CHANDLER, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES AND SOUTHWICK, P.JJ., AND MYERS, J.
GRIFFIS, J., Concurring in Part and Dissenting in Part.
¶ 49. I respectfully dissent from the majority's decision to reverse the chancellor's finding that Richardson is estopped from pursuing her petition to disinherit and remand for a full hearing on the merits of the petition to disinherit. I concur with the majority's decision to reverse the chancellor's award of administratrix's fees and attorney's fees and expenses. However, I dissent from the majority's decision to remand for a hearing on the reasonableness of the fees requested.

1. Whether Richardson is estopped from seeking to disinherit the Cornes.

a. Facts.
¶ 50. Because of Richardson's varying and contrary positions, I believe it is necessary to restate the facts in chronological order.
¶ 51. On January 29, 1996, Kela Richardson died intestate at the age of twenty-two.
¶ 52. On August 8, 1996, Richardson, Kela's mother, filed a sworn petition for *632 grant of letters of administration. Richardson was represented by attorney Ellis Turnage, who signed the petition as counsel of record. Richardson asked to be appointed the administratrix of Kela's estate and stated that Kela's heirs-at-law and next of kin were: "Bernice Richardson, mother; Virgil Carnes, father; Chrysanthemum Richardson, sister; Nathan P. White, brother; and Kamia White, sister."
¶ 53. On August 15, 1996, the chancellor granted Richardson's petition for grant of letters of administration, and Richardson was appointed to serve as the administratrix of Kela's estate. Letters of administration were issued to Richardson on August 20, 1996.
¶ 54. Although there was no petition or order in the estate proceeding to authorize the filing or prosecution of a wrongful death claim or the engagement of counsel, Richardson and Turnage prosecuted a wrongful death claim against the physician and other medical care providers who provided treatment to Kela prior to her death.
¶ 55. Their efforts were successful. They obtained a substantial settlement offer. To consummate the settlement, Richardson and Turnage decided upon the necessary action to finalize the settlement. Chancery court approval was required. Richardson and Turnage filed several pleadings to obtain the chancellor's authorization of the settlement.
¶ 56. First, on August 11, 2000, Richardson filed a sworn petition for determination of heirs-at-law and wrongful death beneficiaries (the "Heirship Petition"). In the Heirship Petition, Richardson stated under oath that Kela was survived by the following heirs-at-law and wrongful death beneficiaries: Bernice Richardson, mother; Virgil Cornes, Jr., father; Chrysanthemum Richardson, sister; Nathan P. White, a minor brother; Kamie White, a minor sister; Virgil Cornes, III, a minor brother; Julian Cornes, a minor brother; and Jerome Cornes, a brother. Kela's natural parents, Virgil Cornes, Jr. and Bernice Richardson, were never married. Virgil Cornes, III, Julian Cornes, and Jerome Cornes were Kela's half-brothers, sharing the same father.
¶ 57. Second, on August 16, 2000, Richardson published a summons by publication to all of the heirs named in the Heirship Petition, except for Richardson, and any unknown heirs that required their appearance at a hearing on September 14, 2000. The proof of publication was filed on September 1, 2000.
¶ 58. Next, on September 5, 2000, Richardson filed a sworn petition for authority to settle the medical malpractice claim (the "Settlement Petition"). In the Settlement Petition, Richardson asked the chancellor for authority to settle the wrongful death action against Kela's medical care providers. Richardson, once again under oath, identified each of Kela's heirs-at-law and wrongful death beneficiaries. She asked the chancellor to authorize and direct her to execute and deliver a full and final release and settlement agreement in exchange for the agreed upon consideration. In paragraph no. 2 of the Settlement Petition, Richardson stated under oath:
Petitioner states that at the time of the decedent's death, she was survived by the following heirs at law and wrongful death beneficiaries under the Mississippi Wrongful Death Statute, § 11-7-13 Mississippi Code Annotated (1972): Petitioner; her father, Virgil Cornes, Jr.; her sister, Chrysanthemum Richardson; her brother, Jerome Cornes; her brother, Julian Cornes; her brother, Nathan Duwell White; her sister, Kamica White; and, her brother, Virgil Cornes, III. They have been declared wrongful death beneficiaries by separate order of the court. These known heirs-at-law *633 and/or wrongful death beneficiaries are made respondents. All unknown wrongful death beneficiaries and heirs-at-law have been summoned in accord with the Mississippi Rules of Civil Procedure and Mississippi law to appear and state the basis of their claim.
(emphasis added). In paragraph no. 5 of the prayer for relief, Richardson asked the chancellor to authorize and grant the following relief:
That after acceptance of the settlement, Petitioner will be authorized to distribute the remainder of the settlement funds equally among the wrongful death beneficiaries of Kela Richardson, deceased, with a 1/8 (one-eighth) share being distributed to each of the 8 (eight) wrongful death beneficiaries.
(emphasis in original).
¶ 59. On September 22, 2000, Richardson published another summons by publication to all heirs-at-law and unknown wrongful death beneficiaries that required their appearance at a hearing, on November 2, 2000, on the Heirship Petition and the Settlement Petition. The proof of publication was filed on November 1, 2000.
¶ 60. From October 16, 2002 through November 22, 2000, Richardson filed separate waivers of process and joinders in the Heirship Petition and Settlement Petition that were signed by: Richardson; Chrysanthemum Venquiel Richardson; Virgil Cornes, Jr.; Richardson, as guardian of Nathan Duwell White; Virgil Cornes, Jr. as guardian of Virgil Cornes, III; Julian Cornes; Jerome Cornes; and Richardson, as guardian of Kamica White.
¶ 61. Virgil Cornes, Jr., Jerome Cornes, and Julian Cornes executed waivers of process and joinders in the Heirship Petition and Settlement Petition. The waivers and joinders were prepared and their signatures were solicited by Turnage. Virgil Cornes, Jr., also executed a waiver of process and joinder in the petitions as the guardian of Virgil Cornes, III, a minor.[4]
¶ 62. On November 29, 2000, the chancellor entered two separate orders. First, the chancellor entered an order granting authority to settle a claim of the estate and wrongful death beneficiaries. This order granted the relief requested in Richardson's sworn Settlement Petition, exactly as requested. The chancellor specifically authorized and directed Richardson to distribute the proceeds equally among Kela's eight wrongful death beneficiaries.
¶ 63. Second, the chancellor entered an order determining the heirs-at-law and declaring the wrongful death beneficiaries. Again, the chancellor's order granted the exact relief requested in Richardson's sworn Heirship Petition, and it specifically declared that Virgil Cornes, Jr., Jerome Cornes, Julian Cornes and Virgil Cornes, III were among Kela's heirs-at-law and wrongful death beneficiaries. Contrary to the majority's "view," this order constitutes the chancellor's adjudication that Virgil Cornes, Jr., Jerome Cornes, Julian Cornes and Virgil Cornes, III, were among Kela's eight wrongful death beneficiaries.
*634 ¶ 64. On December 6, 2000, Virgil Cornes, Jr., individually and as guardian of Virgil Cornes, III, executed a Final Release and Settlement Agreement that consummated the settlement agreement. On January 4, 2001, the chancellor entered an order granting authority to open an interest bearing account and authorizing Richardson to deposit $339,077.80 in settlement proceeds.
¶ 65. Nevertheless, despite the chancellor's orders that were entered at their request and based on Richardson's sworn statements, Richardson and Turnage failed and refused to distribute the settlement proceeds as authorized and directed by the chancellor. Richardson and Turnage offered no reason or excuse for disregarding the court's orders, orders which Turnage drafted and submitted to the chancellor.
¶ 66. On June 6, 2001, approximately six months later, Richardson filed a second petition for determination of heirs-at-law and wrongful death beneficiaries. In this petition, for the first time and contrary to the prior sworn pleadings filed and orders entered, Richardson asked the chancellor to disinherit Kela's natural father and his kindred, pursuant to Mississippi Code Annotated Section 91-1-15(3)(d)(i). Richardson asked the chancellor to consider, for the second time, the legal determination of Kela's heirs-at-law and wrongful death beneficiaries.

b. The chancellor's order.
¶ 67. On March 1, 2002, the chancellor entered an order finding that the administratrix had not yet distributed the settlement proceeds to the wrongful death beneficiaries, that the November 29, 2000 orders were not final judgments pursuant to M.R.C.P. 54, and that the administratrix was prohibited from maintaining her petition to disinherit. The chancellor then ratified the November 29, 2000 orders and directed the administratrix to file a petition to close the estate.
¶ 68. The chancellor's order considered two separate pleadings: Richardson's petition to disinherit, and the Corneses' petition to enforce the court's prior orders. At the conclusion of the hearing, the chancellor rendered an oral ruling stating that his ruling was based upon "equity, primarily equitable estoppel, and the unclean hands doctrine." Subsequently, paragraph 11 of the chancellor's written order concluded:
[t]hat the Administratrix is prohibited, based on the clean hands doctrine and the doctrine of collateral estoppel, from maintaining her Petition to Disinherit because the Administratrix has made numerous sworn statements that the Cornes are heirs at law and wrongful death beneficiaries of the Decedent to this Court and the Court has found them in fact to be heirs at law and wrongful death beneficiaries of the Decedent, and the Administratrix cannot now make another sworn statement contrary to her prior sworn statements and receive a benefit to the detriment of the Cornes.
¶ 69. Despite any confusion between the chancellor's oral ruling and written judgment, it is clear that the chancellor's decision was based on equitable principles. Reading paragraph 11 in its entirety and in proper context, it is clear that the chancellor determined that Richardson was estopped from making contradictory sworn statements to the court that would benefit her and her children, by reducing the number of wrongful death beneficiaries from eight to four. The chancellor specifically stated that he relied on the equitable doctrines of clean hands and equitable estoppel. Nevertheless, the legal concept the chancellor discussed, in the final sentence of paragraph 11, cites the legal principles *635 and elements necessary to establish the doctrine of judicial estoppel.

c. Richardson's assignment of error  Was the chancellor correct to preclude Richardson's petition to disinherit.
¶ 70. Richardson appeals on one issue: whether the November 29, 2001 order determining the wrongful death beneficiaries and heirs-at-law precludes the petition to disinherit the natural father and his kindred under Mississippi Code Annotated Section 91-1-15(3)(d)(i). At issue is whether an illegitimate child's natural father and his kindred may inherit from and through the illegitimate child. The chancellor determined that the administratrix's prior sworn pleadings[5] were sufficient to answer this question in the affirmative and allow the illegitimate's natural father, Virgil Cornes, Jr., and his kindred to receive an equal share of the wrongful death settlement proceeds.

d. Waiver.
¶ 71. The majority focuses on whether Richardson waived, or had the authority to waive, the requirements of Mississippi Code Annotated Section 91-1-15(3)(d)(i) (Rev.1994). I do not believe the facts or the law support the majority's conclusion.
¶ 72. Waiver was not considered by the chancellor.[6] Indeed, Section 91-1-15(3)(d) provides the procedure for descent among illegitimates. The issue that is presented to this Court, however, extends beyond the consideration of this statutory procedure. We must consider the legal effect of Richardson's prior sworn statements to the chancellor, which were relied upon by the chancellor and the settling defendant to authorize the settlement of a substantial wrongful death personal injury action. Nevertheless, I will first discuss waiver.
¶ 73. In First Southwest Corp. v. Lampton, 724 So.2d 988, 995 (¶ 36) (Miss. Ct.App.1998), this Court ruled:
The supreme court has adopted a legal dictionary definition of "waiver":
Waiver presupposes a full knowledge of a right existing, and an intentional surrender or relinquishment of that right. It contemplates something done designedly or knowingly, which modifies or changes existing rights, or varies or changes the terms and conditions of a contract. It is the voluntary surrender of a right. To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived.
(quoting Ewing v. Adams, 573 So.2d 1364, 1369 (Miss.1990) (quoting Ballantine's Law Dictionary 1356 (3rd ed.1969) (citations omitted))). Whether a waiver has occurred is a factual determination, which limits our review. Ewing v. Adams 573 So.2d 1364, 1368-69 (Miss.1990).
*636 ¶ 74. Before Richardson filed her petition to disinherit, there were five sworn pleadings prepared and presented to the court by Richardson and Turnage that identified Virgil Cornes, Jr., as Kela's natural father. Likewise, there were four sworn pleadings that identified Jerome Cornes, Julian Cornes, and Virgil Cornes, III, as Kela's half-brothers. More revealing, however, is the language Richardson and Turnage used in the Settlement Petition, where they unequivocally stated, under oath, that the Corneses "have been declared wrongful death beneficiaries by separate order of the court."[7]
¶ 75. The majority looks solely at its interpretation of the "public policy" the legislature intended in enacting Mississippi Code Annotated Section 91-1-15(3). The majority does not consider the legal effect of Richardson's prior representations that resulted in the chancellor's November 29, 2000 order determining Kela's heirs-at-law and declaring the wrongful death beneficiaries. The chancellor considered, indeed relied upon, Richardson's prior pleadings or his prior orders in rendering his decision. So should we.
¶ 76. When Richardson and Turnage filed the Heirship Petition and Settlement Petition, there was no indication, in any of their sworn pleadings, that the Corneses' rights to inherit or recover as Kela's wrongful death beneficiaries were, would or may be in controversy. Nowhere did Richardson or Turnage advise the chancellor that any of the named individuals were "potential" heirs or indicate that there was any remaining controversy on or challenge to the Corneses' right of heirship or their right to receive a portion of the wrongful death settlement proceeds.
¶ 77. The majority concludes that "the chancellor was not warranted in finding that Richardson's petition to disinherit the Cornes constituted a `sworn statement contrary to her prior sworn statement.'" The mere fact that Richardson filed the Heirship Petition was evidence that Richardson (a) made a sworn statement that the Corneses were Kela's proper wrongful death beneficiaries, and (b) intended for the chancellor to declare them to be Kela's wrongful death beneficiaries. The majority may rely on and discuss potential definitions of Richardson's use of the word "heir," but they cannot dismiss Richardson's actions in filing the Heirship Petition and obtaining an order from the chancellor granting the Heirship Petition. Even applying the majority's legal reasoning, a waiver occurred. Richardson's sworn statement, in the Settlement Petition, that the Corneses "have been declared wrongful death beneficiaries by separate order of the court" was sufficient to satisfy the definition of waiver, defined as "an act or omission ... fairly evidencing an intention permanently to surrender the right alleged to have been waived." First Southwest Corp., 724 So.2d at 995 (¶ 36).
¶ 78. For the majority to reach its decision, the majority must disregard Richardson's prior sworn pleadings and interpose their interpretation of what Richardson meant by the words she used in her pleadings. Beginning in 1996, Richardson had a right, pursuant to Mississippi Code Annotated Section 91-1-15(3)(d)(i), to petition the chancery court to determine if Virgil Cornes, Jr. and his kindred should be disinherited and not allowed to receive any of the wrongful death proceeds. The majority, without citing legal authority, concludes *637 that, even though Richardson previously provided the chancellor with contradictory sworn statements that the Corneses were indeed declared to be Kela's wrongful death beneficiaries, Richardson could not waive her rights to disinherit.
¶ 79. I am of the opinion that the majority's legal reasoning is flawed, and they reach an incorrect result. Nevertheless, I am of the opinion that the doctrine of judicial estoppel, not waiver, governs this appeal.

e. Judicial Estoppel.
¶ 80. The doctrine of judicial estoppel is applied "where a party asserts one position in a prior action or pleading but then seeks to take a contrary position to the detriment of the party opposite." Mississippi Power & Light Co. v. Cook, 832 So.2d 474, 482 (Miss.2002); Mauck v. Columbus Hotel Co., 741 So.2d 259, 264 (Miss.1999); Skipworth v. Rabun, 704 So.2d 1008, 1015 (Miss.1996). The doctrine "is based on expedition of litigation between the same parties by requiring orderliness and regularity in pleadings." Mauck, 741 So.2d at 264.
¶ 81. Judicial estoppel prohibits parties in litigation from playing "fast and loose with the courts" which is a misuse of the courts and should not be tolerated. Scarano v. Central Railroad Co., 203 F.2d 510, 513 (3d Cir.1953). In Dockins v. Allred, 849 So.2d 151, 155(¶ 8) (Miss.2003), the supreme court explained the doctrine as follows:

Judicial estoppel precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation. Dockins's claim that the entire amount was in controversy (to the extent such a claim was made) does not face such a bar. "[W]hen the party making the prior statement, which is inconsistent with his position in the present action, has not benefitted by the assertion, the doctrine should not be applied." Mauck v. Columbus Hotel Co., 741 So.2d 259, 265 (Miss.1999) (citing Thomas v. Bailey, 375 So.2d 1049, 1053 (Miss.1979)). Dockins did not benefit from his assertion that there was more than 21.53% of the fee in controversy. Allred, however, did benefit from its stance, and it is estopped from asserting a contrary position in a later proceeding involving the same controversy.
(emphasis added).
¶ 82. The public policy behind the doctrine of judicial estoppel is simple and important. Judicial estoppel deters parties from misleading, deceiving or making misrepresentations to our courts. In our judicial system, litigants and counsel are expected to be candid, honest and forthright when filing pleadings and appearing before courts of this state for relief. Judicial estoppel prevents litigants from playing "fast and loose with the courts" which is a misuse of the courts and should not be tolerated. Scarano, 203 F.2d at 513.
¶ 83. Here, Richardson's and Turnage's actions can be considered nothing less than a misuse of the courts and should not be tolerated.[8] This Court should not sanction, indeed reward, a litigant's deception and misuse of the courts.
*638 ¶ 84. Richardson and Turnage filed the pleadings that resulted in the case being decided based on the equitable doctrines of judicial estoppel, unclean hands and equitable estoppel, rather than on the statutory structure of Mississippi Code Annotated Section 91-1-15(3). Had Richardson and Turnage taken a different procedural route, i.e., shown candor and honesty with the chancellor, a different result may have been obtained. Instead, they chose not to do so.
¶ 85. Now, this Court rewards Richardson's and Turnage's deception and misrepresentation. The majority allows Richardson a second bite at the apple so that she can benefit from her decision to play "fast and loose with the courts." Richardson's actions constitute a misuse of the courts that should not be tolerated. Scarano, 203 F.2d at 513. "Judicial estoppel precludes a party from asserting a position, benefitting from that position, and then, when it becomes more convenient or profitable, retreating from that position later in the litigation." Dockins, 849 So.2d at 155 (¶ 8). The chancellor correctly applied this legal principle.
¶ 86. I am of the opinion that the chancellor was within his discretion and legally correct to deny Richardson's petition to disinherit based on the doctrine of judicial estoppel. I would affirm the chancellor's decision.

f. Unclean Hands.
¶ 87. Likewise, the chancellor was correct to apply the equitable doctrine of clean hands. "The clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue." Bailey v. Bailey, 724 So.2d 335, 337 (¶ 2) (Miss.1998). In Bardwell v. White, 762 So.2d 778, 783 (Miss.Ct.App. 2000), this Court held that "the clean hands doctrine bars relief to those guilty of improper, unconscientious, or unjust conduct in the matter as to which they seek equity." The majority holds that "[w]e do not believe that the exercise of a statutory right, without more, can be the basis for sustaining a charge of unclean hands." The majority does not cite legal authority for this holding, and I can find no authority to support it. Indeed, it is not the exercise of a statutory right that is the basis for the application of the unclean hands doctrine. The evidence that supported this finding was Richardson's sworn statements that the Corneses were declared to be Kela's wrongful death beneficiaries. The majority disregards this evidence.
¶ 88. Richardson and Turnage presented several sworn petitions to the chancellor that unequivocally represented the Corneses to be Kela's wrongful death beneficiaries. Turnage, as Richardson's attorney, presented the petitions to the chancellor and persuaded the chancellor to execute orders that: (a) found and declared the Corneses to be Kela's wrongful death beneficiaries, (b) approved a substantial monetary settlement and authorized the disbursement of settlement proceeds to the wrongful death beneficiaries, which included the Corneses, and (c) authorized and directed Richardson to execute a full and final release of all claims, which Turnage had also presented to the Cornes. Richardson and Turnage then failed to follow the clear and precise directive, in the order Turnage drafted, to distribute the wrongful death proceeds to the declared wrongful death beneficiaries, which specifically included the Corneses. Richardson filed the petition to disinherit only after the Cornes asked Turnage for their share of the wrongful death proceeds.
¶ 89. Throughout these pleadings, neither Richardson nor Turnage represented *639 to the chancellor that there was, would or may be any controversy or challenge on the issue of whether the Corneses were wrongful death beneficiaries. The chancellor relied on Richardson's sworn representations when he first determined and declared that the Corneses were Kela's wrongful death beneficiaries and was not required to accept her subsequent contradictory sworn statements. The chancellor was correct to find that Richardson's pleadings were binding on her. Minor v. Engineering Service Co., Inc., 304 So.2d 45, 48 (Miss.1974).
¶ 90. Richardson argues that she, as the administratrix, had a duty to protect the assets of the estate. To support her position, Richardson cites Mississippi Code Annotated Section 91-1-15(3)(d)(i) and Estate of Patterson v. Patterson, 798 So.2d 347, 348 (Miss.2001). Richardson is correct that Section 91-1-15(3)(d) provides that "[t]he natural father of an illegitimate and his kindred shall not inherit:(i) from or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child." Likewise, Richardson is correct that, in Patterson, the court held that in order for a putative father to inherit through an illegitimate, he must prove he is the natural father and that he is entitled to inherit by clear and convincing evidence. Patterson, 798 So.2d at 348.
¶ 91. The Corneses respond that Richardson's actions constituted a wilful and calculated attempt to perpetuate a fraud on the chancellor that was improper, unconscientious and unjust. The Corneses point the court to the actions and representations by Richardson and Turnage to obtain the Corneses' signatures on the waiver of process and joinder in the Settlement Petition. Turnage, acting as Richardson's attorney, even went so far as to open a guardianship for Virgil Cornes, III, naming Virgil Cornes, Jr. as the guardian, to obtain the necessary authority to execute the waiver of process and joinder in the Settlement Petition. The Corneses executed the waivers understanding that they were the proper heirs-at-law and wrongful death beneficiaries of Kela Richardson, and they did not believe that any further proceeding was necessary to protect their rights as such.
¶ 92. The chancellor agreed with the Corneses' argument. Because of Richardson's and Turnage's actions and representations in obtaining the waivers and joinders, in submitting the Heirship Petition and the Settlement Petition and in obtaining the chancellor's approval of the orders determining Kela's heirs and authorizing the settlement of the wrongful death action, Richardson came before the court with unclean hands when she presented the petition to disinherit and should not be allowed to benefit from such wilful misconduct or such improper, unconscientious, or unjust conduct.
¶ 93. I am of the opinion that the chancellor was within his discretion and legally correct to deny Richardson's petition to disinherit based on the doctrine of unclean hands. I would affirm the chancellor's decision.

g. Equitable Estoppel.
¶ 94. Next, while the oral decision and written order were are in conflict over whether the chancellor relied on the doctrine of equitable estoppel or collateral estoppel, it is clear that the doctrine of collateral estoppel was not applicable to this case.
¶ 95. "The doctrine of equitable estoppel is based upon fundamental notions of justice and fair dealing." O'Neill v. O'Neill, 551 So.2d 228, 232 (Miss.1989). The supreme court has identified two elements that must be satisfied: "(1) that he [a party] has changed his position in reliance *640 upon the conduct of another; and (2) that he has suffered detriment caused by his change of position in reliance upon such conduct." Id. at 232 (citing PMZ Oil Co. v. Lucroy, 449 So.2d 201, 206 (Miss.1984)). From the previous discussion of the facts of this case, the chancellor was within his discretion to find that the Corneses relied upon the actions and representations of Richardson and Turnage that they would be adjudicated as Kela's wrongful death beneficiaries. The Corneses relied on their representations of Richardson and Turnage in joining the Heirship Petition and Settlement Petition. They suffered detriment because of the change in position by Richardson and Turnage.
¶ 96. Additionally, under Mississippi law, an administratrix is under a duty to use reasonable diligence to ascertain potential heirs. Smith, By and Through Young v. Estate of King, 501 So.2d 1120, 1122-23 (Miss.1987). An administratrix acts as a fiduciary for all persons interested in the estate. Shepherd v. Townsend, 249 Miss. 383, 392, 162 So.2d 878, 881 (1964). Further, in the absence of fraud or mistake, an administratrix or executrix may not take inconsistent positions which could be detrimental to beneficiaries, on the one hand, and beneficial to herself on the other hand. Estate of Ratliff, 395 So.2d 956, 957 (Miss.1981).
¶ 97. In this case, Richardson took a position in the estate of Kela Richardson that was beneficial to her and detrimental to Virgil Cornes, Jr. and his kindred. Our courts have long followed the maxim of equity that no person bound to act for another can act for herself. Estate of Johnson v. Harris, 705 So.2d 819, 823 (¶ 36) (Miss.1996). Thus, Richardson should not be allowed to now petition the court to disinherit Virgil Cornes, Jr. and his kindred when she filed sworn pleadings that they were Kela's proper heirs-at-law and wrongful death beneficiaries. To find otherwise would allow her to take an inconsistent position detrimental to beneficiaries.
¶ 98. I am of the opinion that the chancellor was within his discretion and legally correct to deny Richardson's petition to disinherit based on the doctrine of unclean hands. I would affirm the chancellor's decision.
¶ 99. Accordingly, I dissent from the majority's decision to remand this case to consider Richardson's petition to disinherit. I would affirm the chancellor's ruling and remand to the chancellor solely to facilitate the immediate distribution of the settlement proceeds to Kela's wrongful death beneficiaries identified in the chancellor's order granting the Settlement Petition.

2. Whether the chancellor erred in allowing administratrix and attorney's fees.
¶ 100. I agree with the majority that the chancellor's award of $40,000 to Bernice for administratrix's fees and the award of $5,496.61 for attorney's fees and expenses were not supported by any evidence and should be reversed. I disagree, however, that we should remand on this issue. Instead, because Bernice and Turnage failed to present any evidence to support the awards of an administratrix's fee or attorney's fee, this Court should render on this issue.
¶ 101. On June 27, 2001, Richardson and Turnage filed a sworn petition for final accounting and to close estate. In this petition, Richardson requested a fee for serving as the administratrix, in the amount of $40,000, and attorney's fees and expenses for Turnage in the amount of $5,496.61. No affidavits or supporting documentation were attached to the petition. *641 No evidence of such fees and expenses were presented to the chancellor.
¶ 102. On July 3, 2002, the chancellor entered an order that authorized payment of administratrix's fees in the amount of $40,000 to Richardson, and attorney's fees and expenses in the amount of $5,496.61 to Ellis Turnage. On cross-appeal, the Corneses argue that the chancellor's award of $40,000 to Richardson for administratrix's fees and the award of $5,496.61 for attorney's fees and expenses were not supported by substantial evidence and should be reversed. On this issue, the majority and I agree.
¶ 103. The award of administratrix's fees and attorney's fees is a matter vested within the sound discretion of the court. Moreland v. Riley, 716 So.2d 1057, 1062 (Miss.1998). The chancellor has the duty to review the reasonableness of fees charged to the estate. Id. In making a determination of such fees, the chancellor must comply with Mississippi Code Annotated Section 91-7-299 and Uniform Chancery Court Rules 6.11 and 6.12. Section 91-7-299 provides:
The court shall allow to an executor or administrator, as compensation for his trouble, either in partial or final settlements, such sum as the court deems proper considering the value and worth of the estate and considering the extent or degree of difficulty of the duties discharged by the executor or administrator; in addition to which the court may allow him his necessary expenses, including a reasonable attorney's fee, to be assessed out of the estate, in an amount to be determined by the court.
Uniform Chancery Court Rule 6.11 provides:
Every petition by a fiduciary for the allowance of commissions, or for compensation for extra services and expenses, shall show the total amount of the estate coming into his hands, the total amount disbursed, the balance on hand, the nature and extent of the service rendered and expense incurred by him, and the total amount previously allowed to him on account thereof....
Uniform Chancery Court Rule 6.12 provides:
Every petition by a fiduciary or attorney for the allowance of attorney's fees for services rendered shall set forth the same facts as required in Rule 6.11, touching his compensation, and if so, the nature and effect thereof. If the petition be for the allowance of fees for recovering damages for wrongful death or injury, or other claim due the estate, the petition shall show the total amount recovered, the nature and extent of the service rendered and expense incurred by the attorney, and the amount if any, offered in compromise before the attorney was employed in the matter. In such cases, the amount allowed as attorney's fees will be fixed by the Chancellor at such sum as will be reasonable compensation for the service rendered and expense incurred without being bound by any contract made with any unauthorized persons. If the parties make an agreement for a contingent fee the contract or agreement of the fiduciary with the attorney must be approved by the Chancellor....
¶ 104. As to the award of attorney's fees, the chancellor should consider: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the *642 time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. Moreland, 716 So.2d at 1062 (quoting Dynasteel Corp. v. Aztec Industries Inc., 611 So.2d 977, 986-87 (Miss.1992)).

a. Administratrix's fee.
¶ 105. Richardson and Turnage failed to follow any of these requirements in their request for an administratrix's fee. In a draft of the petition to close the estate, Richardson asked the court to award her a fee of seven percent of the estate's value, in the amount of $43,050. The chancellor may grant the administratrix, as the estate's representative in litigation, compensation for efforts in the litigation.
¶ 106. Here, Richardson provided no itemization of her time and efforts expended on behalf of the estate or in pursuit of the wrongful death claim. While the record reflects that Richardson opened the estate, filed several petitions to finalize the settlement of the wrongful death claim, and then filed another petition that directly contradicted the earlier petitions, there was absolutely no evidence before the chancellor to substantiate the nature and extent of her services. Thus, there was no evidence before the chancellor that would support an administratrix's fee award of $40,000. Accordingly, I agree with the majority that the chancellor abused his discretion in awarding Richardson an administratrix's fee in the amount of $40,000.

b. Attorney's fee.
¶ 107. Likewise, Richardson and Turnage failed to follow any of these requirements in their request for an attorney's fee and expenses. The record lacks any itemization of Turnage's time and efforts expended on behalf of the estate. In the November 29, 2000 order granting the Settlement Petition, Turnage and other associated counsel were granted an attorney's fee in the amount of $263,922, forty percent of the settlement amount, together with the reimbursement of expenses in the amount of $17,922.20. Turnage and the associated attorneys were fully compensated for all fees and expenses owed for the prosecution of the wrongful death claim. Nevertheless, Richardson asked the chancellor to award $5,496.61 for attorney fees and expenses for the estate. Because absolutely no evidence was presented to the chancellor that itemized the time, efforts and expense of the attorney and because the chancellor failed to consider the required factors, I agree with the majority that the chancellor abused his discretion in the award of attorney's fees and expenses.

c. Proper relief to be granted  remand v. render
¶ 108. I dissent from the majority's decision to remand the issue of administratrix's fees and attorney's fees and expenses. This decision allows Richardson and Turnage a second bite at the apple, which is a waste of judicial resources. I would render, thereby granting no fees and expenses due to Richardson's and Turnage's blatant failure to follow the clear requirements of the Uniform Chancery Court Rules.
¶ 109. The majority of this Court fails to enforce clear legal precedent and Uniform Chancery Court Rules. The chancellor did not have the discretion to grant an arbitrary, contingent fee award to the administratrix. Likewise, the chancellor did not have discretion to grant an arbitrary award to the attorney or an award of expenses, without any evidence. There is no legal authority for the chancellor to grant a contingent fee to the administratrix or the attorney. Indeed, both positions *643 may receive reasonable compensation for work or services actually performed.
¶ 110. My disagreement centers on the majority's decision to remand versus render. I find only one case where the appellate courts have discussed the distinction. In Moore v. State, 755 So.2d 1276, 1280-81 (¶¶ 15-16) (Miss.Ct.App.2000), we held:
The distinction between the various grounds of reversal is important because remand of reversed cases may raise double jeopardy concerns. Reversals based upon a finding that the verdict is against the overwhelming weight of the evidence result in remand for new trial. Wetz v. State, 503 So.2d 803, 812 (Miss.1987). Reversals due to trial error also result in remand. Burks v. United States, 437 U.S. 1, 15, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Reversals based upon a finding that the evidence is insufficient to support the verdict, however, are not remanded but are rendered. Id. at 16, 98 S.Ct. 2141.
In Burks, the court explained the double jeopardy concerns in remanding cases reversed due to trial error versus those reversed due to insufficient evidence. The court held:
[R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

Id. at 15, 98 S.Ct. 2141 (emphasis added). Conversely, where a case is reversed due to evidentiary insufficiency, the court ruled "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient, [thus], the only `just' remedy available for that court is the direction of a judgment of acquittal." Id. at 18, 98 S.Ct. 2141.
¶ 111. Since this is not a criminal prosecution, the concerns of double jeopardy do not exist. However, even in civil cases, this distinction still has merit. In Kinnebrew v. Louisiana Ice Co., 216 La. 472, 43 So.2d 798, 808 (1949), the Louisiana Supreme Court held:
We cannot remand the case to enable the appellant to take additional evidence as to the rents collected because he had ample opportunity to prove these facts on the trial of the case and we are not disposed to permit litigants to try their cases by piecemeal and continue protracted litigation as to facts that could have been established on the original trial.
¶ 112. The same logic and reasoning should govern this case. We, as an appellate court, should not burden the chancellor with a second consideration of this issue. This Court unanimously agrees that Richardson and Turnage failed to follow the legal precedent and the Uniform Chancery Court Rules. We should not remand this case to allow a party to furnish evidence which it, either negligently or intentionally, failed to furnish when required by law.
¶ 113. For these reasons, I find no reason to remand this case to allow Richardson or Turnage to now follow the Uniform Chancery Court Rules after they consciously *644 declined to follow the Rules initially.
BRIDGES AND SOUTHWICK, P.JJ., AND MYERS, J., JOIN THIS SEPARATE OPINION.
NOTES
[1] Bernice Richardson and Virgil Cornes, Jr. were never married. Virgil's surname is spelled "Carnes" in the petition for letters of administration. Elsewhere it is spelled "Cornes" and sometimes the "Jr." is omitted. We spell it as it appears in the various documents.
[2] Virgil Cornes's children were listed as heirs and wrongful death beneficiaries in only two of the previously-filed pleadings.
[3] Kamia's name is also spelled in the record as "Kamie" or "Kamica." We spell it as it appears in the various documents.
[4] Ellis Turnage apparently wore several hats. He represented Richardson in the administration of Kela's estate. He represented the wrongful death beneficiaries in the wrongful death action. He also represented Virgil Cornes, Jr. and Virgil Cornes, III, in establishing a guardianship for Virgil Cornes, III. According to the Corneses' brief, Turnage remains as the attorney of record for the guardianship of Virgil Cornes, III, a minor whose interest he is directly opposed in the petition to disinherit. While Turnage's apparent conflicting loyalties will be a topic for a different forum, it clearly evidences that the Corneses relied on Turnage to believe that no further proceedings were required to establish their rights as Kela's legal heirs and wrongful death beneficiaries.
[5] The majority attempts to make a distinction between prior pleadings and orders. The fact that the chancellor determined the prior orders to be interlocutory does not affect the consideration of the doctrine of judicial estoppel. The doctrine of judicial estoppel applies to contrary positions in pleadings. Mississippi Power & Light Co., 832 So.2d at 482; Mauck v. Columbus Hotel Co., 741 So.2d at 264; Skipworth v. Rabun, 704 So.2d at 1015.
[6] At no place in the record can one find a discussion of waiver or the lack thereof. Waiver was neither pled, argued nor considered. The majority answers my argument stating that judicial estoppel was not considered by the chancellor. Paragraph 11 of the chancellor's order plainly discusses the principles and elements of the doctrine of judicial estoppel. Although the chancellor does not use the words "judicial estoppel," the language used by the chancellor describes the doctrine of judicial estoppel. The same cannot be said of waiver.
[7] The majority does not address Richardson's use of this language. Instead, the majority argues that "[a]lthough Richardson was represented by an attorney, there is no reason to assume that she was using the word `heir' as a term of art when she filed her pleadings." This conclusion simply does not withstand scrutiny.
[8] The majority does not recognize that Richardson made contradictory sworn statements. The majority then excuses Richardson's and Turnage's failure to "alert the chancellor ... that there was or would be a dispute regarding the Cornes's right to inherit from Kela" on the grounds that Richardson "was not required to divulge her trial strategy if indeed that was what it was." A litigant's "trial strategy" should never sanction a litigant's failure to be honest and candid with the court.